Ia4WnatC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NATURAL RESOURCES DEFENSE
COUNCIL, INC.,

         Plaintiff,

    v.                              16 CIV. 1251 (ER)

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,
                                 Conference
         Defendants.

------------------------------x

                             New York, N.Y.
                             October 4, 2018
                             12:00 p.m.

Before:

                HON. EDGARDO RAMOS,

                         District Judge

                   APPEARANCES

SARAH V. FORT
MITCHELL BERNARD
    Attorneys for Plaintiff


GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
BY:  EMILY E. BRETZ
    DAWN MESSIER
    ROBERT WM. YALEN
    Assistant United States Attorneys

1              (Case called)
2              MS. FORT:  Good morning, your Honor.  Sarah Fort, on
3     behalf of NRDC, and with me at counsel table is my colleague
4     Mitch Bernard.
5              MS. BRETZ:  Good morning, your Honor, or afternoon, I
6     guess, now.  I'm Emily Bretz, from the U.S. Attorney's Office,
7     on behalf of the EPA.  I'm here with my colleagues Rob Yalen
8     and Dawn Messier.
9              THE COURT:  Good morning to you all.
10             This matter is on for a discovery conference.
11             As I understand it, the government has moved for an
12    extension of the consent decree, and plaintiff believes that it
13    is not in a position to respond adequately until it has some
14    additional information.  Is that basically where we are?
15             Ms. Bretz, why shouldn't I give the NRDC some
16    additional information?  If what's going to happen is that I
17    make them file something and they say, We can only respond to
18    this extent, because we need some additional information, we're
19    going to be back here some weeks down the line.  Correct?
20             MS. BRETZ:  Not necessarily, your Honor.  It certainly
21    would be possible that they would file a response with some
22    narrow set of information that they would need.
23             As we point out in our letter, the deposition topics
24    and document requests were extremely broad, and it's difficult
25    for us to know exactly what information they would need.  If,

1  in its response to our motion, they identified certain
2  individual things they might need, we could either respond with
3  a supplemental declaration, or if we don't believe those facts
4  are actually necessary, your Honor could review our motion and
5  their papers and then decide whether you need additional
6  information to actually decide whether the modification is
7  warranted.
8          THE COURT:  Let me ask this.  Can that be done on an
9  informal basis?  I mean, do we need depositions and document
10 requests, etc., strictly speaking?
11         MS. BRETZ:  Are you asking whether we could have some
12 sort of informal discovery conversations?
13         THE COURT:  Yes.
14         MS. BRETZ:  I suppose it might be possible, although
15 we would end up likely back where we are, and we don't believe
16 any discovery at this point is warranted.
17         If your Honor were to order us to meet and confer, of
18 course, we would be happy to do so.  We just don't believe that
19 it's warranted at this time, given our lengthy declaration that
20 we tried to include all the factors we believed necessary to
21 determine whether an extension is warranted or not.
22         THE COURT:  I read the declaration and I read the
23 papers.  Let me tell you where I currently stand, and I'm
24 obviously open to having my mind changed.  It seems to me that
25 the topics that the NRDC wants to talk about are fair game in

1   connection with the motion.  I don't know that they need all
2   the documents concerning all of these topics, however.
3           Let me ask Ms. Fort or Mr. Bernard.  What do you need?
4           MS. FORT:  Yes, your Honor.
5           THE COURT:  What I mean by that is what do you need
6   minimally in order to be able to respond to the motion?
7   Because I don't think you need all these documents concerning
8   all of these topics.
9           MS. FORT:  Sure.
10          Your Honor, we seek an opportunity to probe behind the
11  declaration and get some information that we think is
12  materially relevant to whether the standard has been met.  EPA
13  is seeking relief from a consent decree that it committed to in
14  a case that has a long history of delay in regulating a
15  chemical that poses a threat to public health, and further
16  delay has real-world consequences.
17          THE COURT:  I'm sorry.  Just so the record is clear,
18  are you referring to delay prior to the bringing of this
19  lawsuit, or are you speaking about delays since this lawsuit
20  has been brought?
21          MS. FORT:  Delay prior to the bringing of this
22  lawsuit.
23          THE COURT:  OK.
24          MS. FORT:  We now are eight years past the point at
25  which EPA indicated that it intended to regulate perchlorate.

1    That regulatory determination required the agency to propose
2    regulations within two years.  The agency still hasn't done so,
3    and in the meantime, this chemical is not regulated on a
4    national scale, and it's not even being monitored until the
5    agency regulates.
6              The agency has submitted a declaration indicating that
7    it needs more time, and we think we need three categories of
8    information to determine whether the standard for modification
9    has really been met.
10             The first is to see whether the agency has been moving
11   as quickly as it reasonably can to date to get these
12   regulations proposed.  For instance, the declaration indicates
13   that certain processes took months longer than the agency
14   indicates, but it provides no information about what the agency
15   was actually doing during those months or the level of
16   resources that it was putting into meeting the deadline,
17   whether there were other discretionary policy preferences that
18   it was elevating over its work on this matter or whether the
19   agency could have sped up other parts of the process to make up
20   for lost time if all of that information was really necessary.
21   So we want to probe into what's happened to date.
22             THE COURT:  OK.
23             MS. FORT:  We also want to probe into what's left to
24   do and whether the six-month extension is really necessary or
25   whether the agency could move more quickly on some of those

1    aspects, eliminate some of them, do some of them in parallel,
2    so that we could shorten the period of the extension if an
3    extension is truly necessary.
4             And third, we'd like to probe into what the
5    consequences would be of holding the agency to the current time
6    line.  One of the factors that is relevant in considering
7    whether or not modification is warranted is whether it would be
8    detrimental to the public interest to enforce the consent
9    decree as it was signed, so we'd like to probe into whether it
10   would be detrimental to the public interest to require the
11   agency to meet its deadline.
12            THE COURT:  What is the current state of play?  I
13   understand there is an automatic extension if a motion is made.
14   Is that right?
15            MS. FORT:  There is an automatic extension until
16   either this Court rules on the motion or until three months
17   later.
18            The intent of that was to avoid last-minute motion
19   practice on October 29 if the Court hadn't had the opportunity
20   to rule.  Right now, the deadline is extended either until your
21   Honor decides whether to grant the motion or until three months
22   after if you haven't issued a determination.
23            THE COURT:  Let me ask you, and maybe this is a
24   question better posed to Ms. Bretz, but from your perspective,
25   given the representations that have been made, is it even

1    possible for this to be done by the end of October?
2              MS. FORT:  I don't think we have that information at
3    this point.  That's a question that we would want to probe if
4    we were given the opportunity to take a deposition.
5              The agency has indicated that the peer review process
6    is now complete and that it's in the process of choosing a
7    level at which to set the limitation and going through some of
8    the sort of paperwork.  Some of that may still be necessary,
9    and some of that may be optional processes that are not
10   actually required, and particularly aren't required when
11   there's already a statutory deadline that has been missed.  I
12   think that is something we need more information in order to
13   assess.
14             THE COURT:  You have not gotten from the EPA or from
15   the government as yet the steps that are necessary to complete
16   the process.
17             MS. FORT:  The declaration lays out some of those
18   steps, but we have questions about how long those actually will
19   take, and we also have questions about whether some of those
20   are optional steps that the agency is not required to take but
21   has a preference to take and, given the public health concerns
22   at issue, might be able to bypass.
23             Even if some level of delay is necessary, that doesn't
24   mean that six months is necessary, and this is a case in which
25   every day matters.  This chemical is unregulated, and people

1  are being exposed at levels that they don't know about, so even
2  if some level of delay is necessary, we might seek to minimize
3  that to a shorter delay.
4         THE COURT:  Let me ask you this.  I think that the
5  three areas that you're interested in inquiring about seem
6  reasonable, but one area of concern that I have is, let's say,
7  for example, that you determine that the EPA has not devoted
8  sufficient resources, either manpower or whatever other
9  resources are required here.  How am I supposed to make a
10 determination that they have or they have not?  To be a sort of
11 supra human resources department for the EPA seems something
12 that's certainly beyond my competency.
13        MS. FORT:  Your Honor, there's a clear legal standard
14 that applies to whether modification is warranted and the
15 burden that the agency has to demonstrate.  If we took the
16 position that the agency has not met that burden, it would be
17 because the agency hadn't demonstrated that it was
18 substantially more onerous or unworkable or not in the public
19 interest for the agency to propose these regulations.
20        Certainly, that is a weighing of factual information,
21 but without the specifics of the case -- it might be that it's
22 a really easy case and your Honor can say one way or the other.
23 And it might be that it's a more difficult call, but we just
24 can't assess that based on the information that we have at this
25 point, because we have no idea what the level of resources that

1     the agency has spent is.

2                THE COURT:  Let me ask you this.  Let's say I grant

3     you the ability to conduct this deposition and it happens on a

4     fairly quick basis and you come back to me next week and you

5     say, No, they haven't devoted sufficient resources to it, I

6     deny the motion.  Does that then mean that they have to

7     complete the process by October 31?

8                MS. FORT:  That would depend on your Honor's order.  I

9     think if you deny the motion entirely, yes, that would mean

10    that they would have to complete the process by October 31.

11               THE COURT:  Then I would be concerned about the

12    consequences.

13               Let me hear from Ms. Bretz.

14               As I've indicated, I think they're entitled to some

15    information.  I think they're entitled to inquire into these

16    areas.  Again, I don't think that they're entitled to all the

17    documents, because I think that may be too burdensome.  But

18    let's say that they come back and they're able to determine,

19    You know what, they've assigned one person to this, fairly low

20    level, who is doing 15 other things, did not give this

21    sufficient priority, and I say:  OK, go; you have until October

22    31 to get this done.  Can you do it?

23               MS. BRETZ:  It would not be a sound and scientific

24    rule, your Honor.  If the Court orders it, we do not want to be

25    in violation of a court order.

1    That being said, the steps that we laid out fully in
2    the declaration and that, I believe, refer to paperwork, and
3    not just paperwork, just the remaining tasks that have to be
4    done, which is develop an MCL, several of the steps are
5    required by executive order.  One of the steps is required by
6    the Safe Drinking Water Act.  So they're not merely shuffling
7    papers.  These are sound, scientific steps that need to be
8    taken, and this rule needs to be tested so that we have an
9    informed proposed rule.  It's going to go out for comment, and
10   we need to make sure that the public is well informed as to
11   what this rule is going to be.
12            The last notice that issued on perchlorate garnered
13   39,000 comments, and the response to those comments, we
14   imagine, in this case would be likely as wide-ranging.  We need
15   to make sure that this has been properly vetted and tested in
16   order to make sure that it's a sound and scientific rule.
17            And if I could say one thing about the depositions?
18            Your Honor mentioned one being held.
19            To respond to the topics that were set forth in the
20   deposition notice and even the three broad categories that
21   Ms. Fort has laid out, we've conferred with the EPA on sort of
22   a broad manner, and we believe it would require at least four
23   to five deponents from various agencies, or various offices
24   within the agency, in order to meet all of these queries.  And
25   if we were to prepare one deponent, all of that work,

1    obviously, would have to be done behind the scenes to garner
2    that type of information.
3            It's not that one person can speak to resources and
4    one person can speak to the work that has been done and another
5    person can speak to the interagency review that has to be done.
6    It's a significant burden on the agency just to prepare a
7    deponent or two.
8            I'm sorry.  There's one more thing.
9            I do also want to mention that those same people would
10   be the people who are doing the work that needs to be done on
11   the rule.  It's not like there's a separate FOIA agency that
12   handles this sort of thing, so it's likely that that would even
13   push the work out that they're doing right now on the rule even
14   further if we had to prepare them for depositions.
15           THE COURT:  Best case scenario, when are you going to
16   be done, if you can say so as you sit here?
17           MS. BRETZ:  I'm sorry.  Done with?
18           THE COURT:  Done with the process.  Compliance with
19   the decree.
20           MS. BRETZ:  Our request for an extension is a request
21   for six months, and so the proposed rule, pursuant to the
22   decree, is supposed to be issued on October 30.  We are asking
23   for an extension until April 30, and we will meet that
24   deadline.
25           THE COURT:  You will meet that deadline.

|   |   |
|---|---|
| 1 | MS. BRETZ:  I should never speak in absolutes. |
| 2 | Barring unforeseen circumstances at this time. |
| 3 | THE COURT:  Why are we here?  What went wrong in terms |
| 4 | of the schedule? |
| 5 | MS. BRETZ:  When the EPA entered into the decree, and |
| 6 | as set forth in the decree, we anticipated that the dual peer |
| 7 | review process would be completed by October 18 of 2017. |
| 8 | In order to get a scientifically sound rule, there's a |
| 9 | dual peer review process.  The first one tests the levels of |
| 10 | perchlorate on pregnant woman, and the second applies the |
| 11 | outputs of that model to a second scientific process, where it |
| 12 | looks at the effects of perchlorate on the neurodevelopment of |
| 13 | the children of those women. |
| 14 | For the first peer review process, the EPA used a |
| 15 | model, a similar model they'd used before.  It had been |
| 16 | implemented before, and they didn't expect that the comments |
| 17 | they would receive back from the peer review panel would be so |
| 18 | extensive, because of the type of model that they used.  When |
| 19 | they got comments back, they were far more wide-ranging and |
| 20 | extensive from this scientific peer review panel, and it took |
| 21 | them an additional five months to fully incorporate all the |
| 22 | science that came back from the panel into making a more sound |
| 23 | and accurate model. |
| 24 | The second peer review panel couldn't be started |
| 25 | because it uses the outputs from the first model, incorporating |

1   into that second.  So the first was delayed by five months,

2   because of all the additional comments, and that pushed

3   everything back.  The second panel, after that was convened,

4   that took an additional month longer than what was expected,

5   and that sort of pushed everything back by about six months.

6            THE COURT:  OK.

7            I'm inclined to grant the additional discovery, and I

8   can enter an order directing you to submit to 30(b)(6)

9   depositions.  I would hope that the parties, rather than have

10  me do that, can, given my guidance in this regard, come

11  together and figure out a fairly expedited schedule for getting

12  those meetings or those interviews done.  And if the EPA wants,

13  they can certify the information that they provide to you.  I

14  just want to get it done.  I do think you're entitled to the

15  information in order to respond properly to the motion.

16           Maybe the best thing to do would just be to grant the

17  additional discovery.  You can take the deposition.  I'm not

18  going to require them to give documents at this point.  Make a

19  very quick determination as to whether or not there are some

20  documents that you absolutely need, and then you can come back

21  to me and see if you need those, and we'll take it from there.

22  OK?

23           Yes, Ms. Bretz.

24           MS. BRETZ:  Just to clarify, your Honor?

25           Are you ordering us to meet and confer, or are you

1    granting the discovery on all the 11 topics?

2             THE COURT:  Just to make everything neat, I will issue
3    the order directing you to submit to a 30(b)(6) deposition.
4    Feel free to do this informally if it's better for the parties,
5    but just so that you have some clear guidance from me, they are
6    entitled to the information, and you should provide it.  And if
7    it's easier for you, for example, to give them some documents
8    in lieu of providing an individual, I am happy to have you
9    folks figure that out on your own just so that we get this
10   moving and that we get you the information that you need so
11   that we can get this thing on track as much as we can.  OK?

12            I can also give you a deadline by which to do this.
13   Do you want to confer?

14            MS. BRETZ:  Yes.

15            We think it would take about four weeks to prepare for
16   a deposition, your Honor, in order to respond to all of these
17   competently.  I mean, I think it would take us four weeks.

18            THE COURT:  Ms. Fort.

19            I don't know whether that's reasonable or not.  I'm
20   not familiar with any of this in terms of the process or
21   science, etc.

22            MS. FORT:  I don't anticipate that that much time and
23   preparation would be necessary.  As I indicated, we're looking
24   to ask the agency questions about what it's done, what it's
25   doing, and what it would need to move faster.  We're happy to

1   confer with the agency and try to work out a schedule so that
2   we can move forward as quickly as possible.
3           One option is that we take the deposition and we ask
4   the questions that we need to ask and we make every attempt to
5   make it clear to the government what the scope of that would
6   be, and if someone needs to be prepared on some additional
7   topic, then we can address that then.  But I don't anticipate
8   that it should take a month to testify as to some of the facts
9   behind the declaration that's already been submitted to the
10  Court.
11          MS. BRETZ:  If it would be possible to get some of the
12  questions in advance; that way we could know.  For example, one
13  of the topics is the availability of staff and resources from
14  outside EPA's office of groundwater and drinking water.  That's
15  arguably -- we don't know who that pertains to.  The entire
16  EPA?  Just office of water?
17          If some of the questions could be narrowed and
18  presented to us, then we could prepare deponents in order to be
19  able to respond.
20          MS. FORT:  Your Honor, we'll confer with the EPA and
21  we'll try to work out a schedule together.  If there's a
22  problem in that process, we can come back to your Honor.
23          THE COURT:  Yes.  A month seems like a long time to
24  me, but I say that with a great level of ignorance about the
25  EPA and its processes.

Ia4WnatC

1  From my perspective, the important thing is that
2  people are moving along as quickly as possible concerning this
3  very important chemical.  I think that the EPA does need to
4  move a little faster.  A month sounds like a lot to me, but I
5  will leave it up to you folks in the first instance.  Get back
6  to me by letter as soon as you're able concerning agreement, or
7  lack of agreement, and we'll figure it out.  OK?
8          MS. BRETZ:  Thank you, your Honor.
9          MS. FORT:  Thank you, your Honor.
10         THE COURT:  OK.  Thank you, folks.
11         MR. BERNARD:  Thank you, your Honor.
12         (Adjourned)